CONTINENTAL NAT. BANK *v.* KOEHLER.

*(Supreme Court, General Term, First Department.   June 19, 1888.)*

1. WITNESS—EXAMINATION—FRAUDULENT COMBINATION.   .
    In an action by the payee against the indorser of a promissory note which defendant claimed was void because of a secret or fraudulent agreement between the payee and the makers, after defendant's witness had related a conversation from which such secret agreement might be inferred, without calling it such, it was not error to permit plaintiff to ask one of the parties to said agreement the question: "Was his [defendant's witness] testimony false in regard to having made a secret agreement with you?"

2. SAME—COMPETENCY—ABILITY TO DETAIL CONVERSATION.
    Where a creditor is charged with having entered into a fraudulent combination with his debtor to defraud other creditors, in a certain conversation, the creditor is not incompetent to testify as to whether such combination was formed because he is not able to give the details of the conversation.

3. APPEAL—REVIEW—SUFFICIENCY OF EVIDENCE.   .
    In an action by a payee against an indorser of a promissory note, where issue is joined on defendant's allegation that the note is without consideration, and void for fraud and collusion between the maker and the payee, a verdict for plaintiff on conflicting testimony will not be set aside on appeal.

4. SAME—REVIEW—DECISION ON FORMER APPEAL.
    Where the validity of a deed, and the rights of the parties thereunder, have been passed upon in a former appeal, they will not again be considered.

Appeal from circuit court, New York county; INGRAHAM, Justice.

Argued before VAN BRUNT, P. J., and DANIELLS and BARTLETT, JJ.

*Frederick Smyth* and *Benno Loewy,* for appellant.   *Strong & Cadwalader,* for respondent.

VAN BRUNT, P. J.   This action was brought to recover upon two certain promissory notes made by one David M. Koehler, and indorsed by the defendant.   The answer of the defendant denies that the note was delivered to the plaintiff for value, or that it is the lawful owner and holder thereof, and alleges that the maker thereof, David M. Koehler, and one Bernard Kupfer, were copartners and the firm name of Koehler & Kupfer, and that, as such copartners, they were indebted, on the 15th of January, 1876, to various persons, among others the plaintiff; and that, being unable to pay all their debts in full, all of the persons, including the plaintiff, made and entered into a compromise agreement whereby they agreed to take 50 cents on the dollar in full satisfaction and discharge of their several debts.   The defendant further alleged that, prior to the execution of the aforesaid agreement by the plaintiff, a secret and fraudulent arrangement and agreement was entered into between the plaintiff and said Koehler & Kupfer, for the purpose of inducing the plaintiff to sign the agreement, whereby they agreed to make and deliver one or more promissory notes for the balance of their claim, beyond the amount secured to all of the other creditors of said firm by said compromise, and that the notes mentioned in the complaint are notes made and delivered to the plaintiff in pursuance of the aforesaid secret and fraudulent arrangement and agreement, and that no other consideration whatever passed between the parties for said notes.   The reply made upon the trial to this new matter set up by the defendant was a denial of the secret agreement or understanding, and an allegation that the composition deed had been abandoned, and that these notes were given to secure the original debt upon a new contract whereby the bank extended certain additional accommodations in the shape of discounts.

There was a direct conflict of testimony between the witnesses upon the part of the plaintiff and the witness upon the part of the defendant in respect to the matter of this secret arrangement or agreement, and also as to the circumstances under which the notes in question were called into being; and the jury declined to find, under the instructions of the court, that, in the negotiation for this compromise agreement, the plaintiffs had been attempting to

perpetrate a fraud upon the other creditors of the firm, and they further found that the compromise agreement had been abandoned, and that these notes were given under the circumstances claimed on the part of the plaintiff. There is no such preponderance of evidence, even if there was any, as to justify the court in interfering with the verdict of the jury. The conflict between the evidence of the alleged parties to this agreement was sharp and decisive. The jury had the evidence before them; they understood the circumstances surrounding each; and, if they chose to believe the witnesses upon the part of the plaintiff, that forms no ground for the interference of this court.

Considerable has been said in regard to the form of this composition deed, and the rights of the parties thereunder. As to whether this would have been a binding instrument upon the plaintiff if carried out, no question remains to be considered, as that was passed upon by the court upon the previous appeal herein.

Neither can the point made upon the part of the appellant prevail, that it was the duty of the plaintiff to have made a demand for the securities called for by the composition agreement before the other parties to the agreement, namely, Koehler & Kupfer, could be said to be in default, becase the evidence on the part of the plaintiff would go to establish that the defendant Koehler understood and believed and represented that the compromise agreement had been abandoned, and could not be carried into effect; and, to support this allegation and this claim upon the part of the plaintiff, evidence was introduced to show that, in respect to another creditor, a different arrangement had been made subsequent to the time of the composition agreement. It is true that this evidence was objected to upon the ground that it was immaterial and collateral to the issue, but it was pertinent to the question as to whether Koehler himself considered the agreement to be binding and in force at the time the notes in question were given; and the jury had a right to infer, unless the notes were given in pursuance of the secret agreement, from the fact of the subsequent negotiations and transactions between the president of the plaintiff and the defendant Koehler, that this compromise agreement had been abandoned, because, unless the secret agreement existed, and unless these notes were given in pursuance thereof, there is no reason whatever for their existence unless the compromise agreement had been abandoned, and Koehler was endeavoring to settle up his affairs, independent of the scheme contained in such compromise agreement. The jury, having found, upon a conflict of evidence, that there was no such secret and fraudulent agreement as was claimed by the defendant, naturally came to the conclusion that credit was to be placed upon the evidence of the witnesses for the plaintiff, rather than upon the witness for the defendant, who had already been discredited in reference to the existence of this secret and fraudulent agreement. It was necessary for the defendant to establish, by a preponderance of evidence, the existence of this fraud. It was not to be presumed, nor to be found upon doubtful evidence.

The exceptions taken to the admissibility of evidence, and also to the refusals to charge, and to the charge itself, present no questions that need any extended discussion. The questions involved presented with distinctness to the jury, and there was no opportunity for their going astray as to the issues involved. The exception to the question put by the plaintiff's counsel to the witness Charles Bard is not well taken. The fact that the words "secret agreement" did not enter into the conversation which was then being inquired into was not at all material, because it was an agreement which the defendant in his pleadings had characterized as secret and fraudulent, and which in its very nature is secret, and was so understood to be by the witnesses; and when it was referred to as a secret agreement in the question, although, perhaps, the word "secret" may not have been used before it, it still conveyed no erroneous impression either to the jury or to the witnesses. A party has a

right, upon examination of a witness contradicting another in regard to the language used by him, to use the language which has been before testified to, or the substance thereof, in the putting of the question in answer to which the contradiction is expected. The criticism that the witness could not give the details of the conversation, and that, therefore, he should not be allowed to testify that no such conversation took place, does not seem to be well founded, because a man may very well fail to remember in detail what transpired at a particular conversation; have a distinct recollection as to whether or not he had entered into a fraudulent combination with his debtor, and that at that time, to defraud his other creditors.

There do not seem to have been any errors committed in the trial of this action which called for a reversal of this judgment, and it should therefore be affirmed, with costs.

BARTLETT and DANIELS, JJ., concur.